**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

**PRE-AWARD BID PROTEST**

| |
| NAVIENT SOLUTIONS, LLC, |
| |
|       Plaintiff, | CFC No. _____
| |
| v. | Judge _____
| |
| THE UNITED STATES OF AMERICA, | ███████████████████
| |
|       Defendant |
| |

**COMPLAINT FOR INJUNCTIVE RELIEF**
**AND A DECLARATORY JUDGMENT**

Navient Solutions, LLC (f/k/a Navient Solutions, Inc.) ("Navient"), through its undersigned counsel, brings this pre-award bid protest action against the Defendant, the United States of America, and states as follows:

**NATURE OF THE CASE**

1.      This is a pre-award bid protest action for declaratory and injunctive relief. In February 2018, the U.S. Department of Education ("ED" or the "agency"), Office of Federal Student Aid ("FSA"), issued a request for proposals ("RFP") for the FSA Next Generation Processing and Servicing Environment procurement (the "NextGen") as a two-phase procurement.[1] Only those offerors selected during Phase I are eligible to submit proposals for Phase II.

---

[1] Available at
https://www.fbo.gov/index?s=opportunity&mode=form&id=18d38106a0616cc4841d62f15c0917f9&tab=core&_cview=1 (last visited October 10, 2018).

████████████████████████

2.     When issued, the NextGen RFP included nine discrete components.  The language of the RFP indicated that *integration* among the nine components was a key concern for ED and critical to the success of the NextGen program.  ED did not mention or reserve the right to cancel or otherwise materially modify individual components prior to award.

3.     In late August 2018, after Phase I proposals were submitted, but before the Phase I downselect announcement, the agency modified and amended the procurement and cancelled NextGen components A, B, and H.

4.     ED materially changed the RFP terms, scope, and purpose by modifying and amending the procurement to remove components A, B, and H.  Components A, B, and H were significant portions of the solicitation.  The removal of components A, B, and H removed much of the integration and identity and access management ("IAM") activities, radically changing the scope and nature of the Phase I solicitation scope of work such that submission of Phase I responses was based on a fundamentally different scope of work.  If prospective offerors had known of this change before the Phase I proposal due date, ███████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████

5.     Removing components A, B, and H so materially changed the Phase I scope of work that the agency was actually required to cancel the RFP, issue a new RFP reflecting the agency's revised and modified requirements, and accept new Phase I proposals.  In the alternative, the agency should have amended the RFP and permitted submission of new Phase I proposals by prospective offerors including those █████████████████████████ ████████

████████████████████████████████████████

6.      If the agency had stated its needs in the current manner (i.e., without components A, B, and H), Navient would have ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████

7.      As noted above, the Phase I RFP included nine components and an emphasis on integration between components.  Despite this clear acquisition strategy provided to prospective offerors through the RFP and agency answers to questions, the agency removed significant components and provided for two of them to be procured under an unrelated limited source procurement vehicle.  The remaining Phase II components are now being managed through disassociated Phase II solicitations.

8.      Further, the agency also materially altered the terms, scope, and purpose of the solicitation by materially changing the requirements for component D.  In the Phase I solicitation, components E and F included "Solution 3.0 business process operations" and "Solution 2.0 business process operations."  Component D included "Solution 2.0 (core processing, related middleware, and rules engine)."  On September 24, 2018, ED issued the component D RFP for Phase II which includes substantial loan servicing business operations services, in sharp contrast to the component D scope set forth in the Phase I solicitation.

9.      If the agency had stated its needs in the current manner (i.e., with the current modifications to component D), Navient ████████████████████████████████████████ ████████████████████████████████████████████████████████████.

10.     The changes to component D so materially changed the Phase I scope of work that the agency was required to cancel the RFP, issue a new RFP reflecting the agency's revised and modified requirements, and accept new Phase I proposals.  In the alternative, the agency

████████████████████████████████████████████████████████████

should have amended the RFP and permitted submission of new Phase I proposals by prospective offerors including those who did not submit as a prime contract offeror for Phase I.

11.     The Supreme Court of the United States has recognized that "the government should turn square corners in dealing with the people …."  In the procurement context, that means that federal agencies must strictly adhere to statutory, regulatory and solicitation requirements advertised to prospective offerors in advance of a solicitation.  ED failed to do that here when it materially changed the solicitation in a manner that prejudiced Navient, a prospective offeror that is responsible and is also interested in and capable of performing the procured work, *as modified*.

12.     The Defendant, acting through ED, violated material terms of the Competition in Contracting Act, 41 U.S.C. §§ 3301 *et seq.* ("CICA"), the Federal Acquisition Regulation ("FAR"), including FAR Part 15 and 15.206, and the terms of the governing solicitation because ED failed to properly cancel the solicitation and issue a new one based on its revised needs (or, in the alternative, amend the RFP and re-open the competition for new offerors); improperly created an unlevel playing field by preventing offerors from submitting Phase I proposals responsive to the agency's actual needs; placed Navient at a competitive disadvantage; and otherwise violated fundamental competition requirements in the governing statutes and regulations. ED's actions are arbitrary, capricious, and lack a rational or reasonable basis.

13.     Navient brings this action to require the agency to cancel the solicitation, and issue a new solicitation in accordance with CICA and the FAR, or, in the alternative, to amend the RFP and permit submission of new Phase I proposals by prospective offerors including those who did not submit as a prime contract offeror for Phase I.

14.     Navient is materially prejudiced by ED's actions.  But for ED's improper actions in failing to cancel the solicitation and issue a new solicitation, Navient would have ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████████████████████

████████████████████████████████████.  In the alternative to cancelling, the agency should amend the Phase I solicitation, permit prospective offerors to submit new proposals, including offerors who did not submit proposals as a prime contract offeror for Phase I, and issue new down-select determinations.

15.     Navient seeks a permanent injunction and a declaratory judgment.  Navient will suffer irreparable harm if relief is not granted by this Court.

## PARTIES

16.     Navient is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 2001 Edmund Halley Drive, Reston, Virginia 20191.  Navient is a leading provider of asset management and business processing solutions for education, healthcare, and government clients at the federal, state, and local levels.

17.     Defendant is the United States of America, its agents, officers, and employees in their official capacities, acting through ED.

## JURISDICTION

18.     Jurisdiction in this Court is based on the Tucker Act, 28 U.S.C. § 1491(b)(1).  This case arises out of violations of law and regulation in connection with a procurement.  Navient objects to ED's failure to cancel or amend the Solicitation.

19.     The remedies sought are authorized by the Tucker Act, 28 U.S.C. § 1491(b)(1), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

20.     Navient has standing to protest as an interested party and has been materially prejudiced by the agency's improper procurement actions.  28 U.S.C. § 1491.  Navient has a direct economic interest in the protested procurement.  Navient is a prospective offeror ████

████████████████████████████████████████████████████████

but for ED's failure to follow CICA, 20 U.S.C. § 1018a, and the FAR. ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████

**STATEMENT OF FACTS**

21.     In June 2009, Navient's parent company, Navient Corporation (formerly Sallie

Mae)[2], was one of four companies awarded contracts to service federal student loan portfolio held

by ED.  The incentive-based contract had an initial five-year ordering period with an optional five-

year ordering period.  ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████     Among other functions, Navient processes transactions related to FSA student loan

servicing activity, including on-boarding loans, processing payment information, processing

income-driven repayment plan enrollment, and handling borrower inquiries and correspondence,

due diligence, skip-tracing, and deferment and forbearance requests.

22.     ████████████████████████████████████████████████████.

---

[2] In 2014, Navient successfully completed a separation from Sallie Mae.  This separation
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████

23. On February 20, 2018, ED issued the NextGen solicitation through FedBizOpps. The RFP was issued because "the Government seeks to implement a flexible, world-class financial solution to leverage in supporting its citizens."

24. The RFP provided for a two-phased procurement, stating:

> This is Phase I of a two-phase source selection in accordance with 20 U.S.C. 1018a(d) and ED Acquisition Regulation (EDAR) (48 C.F.R.) 3415.302-70(b).

25. The agency subsequently issued five modifications to the RFP, with Amendment 005 issued on March 29, 2018. Phase I proposals were due on April 18, 2018.

26. The solicitation requested a single integrated solution that included nine components: Component A: Enterprise-wide digital platform and related middleware; Component B: Enterprise-wide contact center platform, customer relationship management ("CRM"), and related middleware; Component C: Solution 3.0 (core processing, related middleware, and rules engine); Component D: Solution 2.0 (core processing, related middleware, and rules engine); Component E: Solution 3.0 business process operations; Component F: Solution 2.0 business process operations; Component G: Enterprise-wide data management platform; Component H: Enterprise-wide IAM; and Component I: Cybersecurity and data protection.

27. The agency's directions to potential offerors were expressly stated in the RFP and agency answers to bidder questions ("Q&A"). Offerors were allowed to submit proposals for one or more of the nine components. See RFP at page 23 (noting offerors could submit responses "for an individual, multiple, or all component(s)").

28. While offerors were free to submit proposals for one or more of the components, the agency viewed integration capabilities as critical. The RFP (at page 10) provided that

integration among components was a key concern and was critical to the success of the NextGen program:

> Components will be subject to overarching constraints including:
>
> **Integration**: Solutions must include features to allow them to easily integrate with NextGen, other FSA [Federal Student Aid] systems, and other third-party solutions. All vendors will also be responsible for taking the steps necessary to connect their solution(s) with other components of NextGen and FSA's existing systems where necessary to realize the goals outlined in Section III.

29. Potential offerors were encouraged to deliver comprehensive solutions that offered an integrated approach that addressed all of the components. The solicitation included evaluation factors that focused on minimizing risk, reducing costs, integration, and ability to integrate. These evaluation factors meant that a single integrated solution – versus a disparate, uncoordinated component-based solution – would best meet and exceed the evaluation criteria and meet the agency's needs.

30. Considering the RFP's focus on integration among the components, ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████

31. ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████

████████████████████████████████████████████

(emphasis added).

32. ████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████

33. ███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████

34.     On August 24, 2018, well after submission of Phase I proposals, the agency

issued a modification through FedBizOpps cancelling component H, Enterprise-wide IAM.

35.	On August 27, 2018, well after submission of Phase I proposals, the agency issued a modification through FedBizOpps cancelling component A, Enterprise-wide digital platform and related middleware; and component B, Enterprise-wide contact center platform, customer relationship management ("CRM"), and related middleware.

36.	On August 29, 2018, the agency announced it would obtain the requirements of components A and B through a different contracting vehicle, and ED issued a Request for Quotation ("RFQ") under the CIO-SP3 contract vehicle. This removed components A and B from the full and open RFP and placed them on a limited source contracting vehicle.

37.	After the Phase I proposals were submitted, ED materially changed the RFP terms and scope by modifying the solicitation to remove components A, B, and H. The removal of components A, B, and H removed much of the integration and IAM activities and radically changed the scope and nature of the Phase I solicitation. Without components A, B, and H, the RFP provided for a much smaller scope of work with less emphasis on overall integration. The Phase I proposals were therefore based on a fundamentally different scope of work than the current scope.

38.	On September 7, 2018, Navient submitted a letter to the ED Contracting Officer requesting that ED amend the solicitation and re-open the procurement based on material changes to the RFP. Navient's letter stated in relevant part:





39.     On September 24, 2018, ED responded to Navient's September 7, 2018 letter,

stating:



40.     On September 24, 2018, ED posted notice of its down selection for Phase I.

41.     On September 24, 2018, the agency also issued the Phase II solicitations for components C, D, E and F.  The Phase II solicitation for component D included a materially different scope than was included for component D in the Phase I solicitation.

42.     In the Phase II solicitations, ED materially altered the scope of the requirements of component D by including substantial loan servicing business operations services in component D that are also included in components E and F.  ED also changed the functional scope of component C.

43.     The following table illustrates the changes between Phases I and II for component C[3]:

| Phase I RFP Reference | Phase II RFP Reference |
|---|---|
| Component C, Page 13: "Solution 3.0 should serve as the environment for FSA's new customers and will provide the technical systems necessary to service loans for customers with the loans and repayment plans that FSA offers today" | Not found |
| Not found | Component C, Page 4: "FSA envisions the Future State Core Platform addressing functions across the full student aid lifecycle, from application to payoff or default." |
| Not found | Component C, Page 5, C.2.3.b: "Application and eligibility: Solution will collect and process applications for student aid based on eligibility rules.<br>☐ Solution shall track application status from application start to completion and detail rationale for rejections or declines.<br>☐ Solution shall allow for application changes or entry errors to be easily fixed by applicant, FSA, partners (e.g., schools), or designated vendors. |

---

[3] The Phase II RFP for component C is available at: https://www.fbo.gov/spg/ED/FSA/CA/91003118R0023/listing.html (last visited October 10, 2018).

| Phase I RFP Reference | Phase II RFP Reference |
|---|---|
| | ☐ Solution shall enable as needed changes to eligibility rules without requiring major system overhauls and at no cost." |
| Not found | Component C, Page 5, C.2.3.c: "Origination and disbursement: Solution will execute processes to originate and disburse student aid programs (e.g., Direct Loans, Pell Grants, TEACH Grants) according to respective policies and rules for approved students/ borrowers. ☐ Solution shall receive and process origination and disbursement data from Title IV Eligible Higher Education Institutions. ☐ Solution shall reconcile and report on Title IV funds disbursed at a school and program level. ☐ Solution shall interface with FSA and other third-parties (e.g., schools, Treasury, IRS, other vendors)." |

44.     The following table illustrates the changes between Phases I and II for component

D[4]:

| Phase I RFP Reference | Phase II RFP Reference |
|---|---|
| Component D, Page 15: "Where resources are needed for operational functions, Solution 2.0 will provide mechanisms for the Solution 2.0 business process operations solution (Component F) to operate within the Solution 2.0 system boundaries." | Not found |
| Not found in Component D | Component D, C.3.3.c: "Imaging, printing, and mailing: Solution will receive, image, and route servicing-related physical mail to the appropriate destination and will also be responsible for all printing and outbound mail needs. Solution will also provide tracking of and reporting on outbound mail items. Solution will identify cost efficiency opportunities and work with FSA to |

[4] The Phase II RFP for component D is available at:
https://www.fbo.gov/spg/ED/FSA/CA/91003118R0022/listing.html (last visited October 10, 2018).

| Phase I RFP Reference | Phase II RFP Reference |
|---|---|
|  | implement changes to processes and practices (e.g., statement or envelope design). ─ Solution shall enable the Customer Communications and Outreach and Contact Center Support solutions to submit and track outbound print and mail requests. ─ Solution shall image and index inbound mail, including physical checks, and provide access or visibility to the images and metadata to other components." |
| Not found in D | Component D, C.3.3e: "Transitional business process operations: Solution will provide transitional business process solutions until the future state business process operations (responsible for contact center support, student aid back-office processing) are fully implemented or as otherwise determined by FSA. ─ Solution shall provide transitional contact center support to respond and resolve inbound servicing customer inquiries across multiple channels. o Solution shall continue using its own technical infrastructure to enable the contact center, including the contact center technical backbone, CRM, agency desktop solution, etc. ─ Solution shall care for outbound communications currently handled by existing servicers or as determined by FSA. ─ Solution shall efficiently execute transitional student aid back-office processing activities that cannot be automated. These tasks will include, but are not limited to, the review, validation, and processing associated with enrollment, applications, and requests for various borrower programs and loan status adjustments. ─ Solution shall assist with financial reporting, reconciliation, and audit functions. ─ Solution shall conduct error and dispute resolution investigation and processing. |

45.     The following table illustrates the changes between Phases I and II for components E and F[5]:

| Phase I RFP Reference | Phase II RFP Reference |
|---|---|
| Component E, Page 16: "Customer engagement and outreach<br><br>– For customers whose loans sit on Solution 3.0 (Component C), this vendor(s) will print and mail all servicing-related materials.<br><br>– A single vendor will be responsible for processing inbound servicing-related physical mail and route it to the appropriate destination for both Solution 3.0 (Component C) and Solution 2.0 (Component D)." | Not found in the EF RFP |
| Component F, Page 18: "Customer engagement and outreach: The solution will develop and execute proactive outbound engagement campaigns to achieve FSA's goals, based on a deep understanding of customer needs, for Solution 2.0 (Component D) loan customers. | Not found in the EF RFP |

46.     These changes materially alter the procurement scope of work.  The agency's actions materially shifted away from a focus on integration among the various components such that two components are being procured under an unrelated limited source procurement vehicle and the remaining components are now being managed through disassociated Phase II solicitations.  If Navient had known of these changes at the time of proposal submission for Phase I, Navient, ████████████████████████████████████████

████████████████████████████████████

---

[5] The Phase II RFP for components E-F is available at: https://www.fbo.gov/spg/ED/FSA/CA/91003118R0024/listing.html (last visited October 10, 2018).

████████████████████████████████████

47. If injunctive relief is not granted, Navient will suffer immediate, substantial and material harm that cannot be redressed through other Court action.

48. Navient has no adequate remedy at law to prevent or correct the irreparable harm that has and will occur.

49. Navient has expended significant time, money, and resources █████████████ ████████ for preparing a Phase I response to a solicitation that has been materially altered.

50. Navient is at a competitive disadvantage by being required to bid based on unduly restrictive requirements that do not represent the agency's needs as they have now become known. Navient's competitive disadvantage will lead to loss of revenue, loss of profits, loss of employees, loss of business opportunities, and damage to its business reputation if relief is not granted.

51. But for ED's failure to cancel and re-solicit, or in the alternative, to amend and re-open for new Phase I proposals, Navient would have █████████████████████ ████████████████ In addition, Navient would have ███████████████████ ███████████. Given that components ███████████████████████████ ████████████████████████████████████████ ███████████████████████████ Given that Navient was ██████████ ████████████████████████████████████████████ ███████████████████████████████████

52. ED's improper failure to cancel (or, in the alternative, amend) the RFP has resulted in irreparable harm to Navient ██████████████████████ ████████████████████████████████████████ ██████████████████████████████████ is not sufficient to mitigate or remedy the harm since ████████████████████

████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

53.     Navient's role in the narrower redefined RFP, absent a cancellation or

amendment, will lead to lost revenue and profits, damage to its reputation, inability to include

this work for past performance references on procurements ████████████████████████████

███████████████████████ .

54.     Navient has suffered irreparable injury by the loss of the opportunity to compete

on a level playing field for the services being acquired through the NextGen solicitation.  ED

failed to properly cancel the solicitation and issue a new one based on its revised needs (or

otherwise amend and re-open for proposals from all prospective offerors); improperly created an

unlevel playing field by preventing offerors from submitting Phase I proposals responsive to the

agency's actual needs; placed Navient at a competitive disadvantage; and otherwise violated

fundamental competition requirements in the governing statutes and regulations.

55.     ED will suffer no comparable injury from the granting of the injunctive relief

requested.  Properly conducting the procurement and allowing offerors, including Navient, to

submit proposals based on the agency's actual needs will benefit ED, the borrowers, and

taxpayers.

56.     There is no harm to the government or other parties to this procurement resulting

from the proper enforcement of procurement laws and regulations as sought by Navient.  Navient

is ready, willing and able to provide the services being procured.

57.     There is also no harm to the public.  It is beyond doubt that the public's interest

lies in its ability to have faith in the procurement process and for offerors to receive an effective

████████████████████████████████████████

remedy when the government violates those rules. A level playing field is at the heart of the federal procurement process.

## GROUNDS OF PROTEST

### COUNT I –
### GIVEN THE REMOVAL OF COMPONENTS A, B, AND H, ED WAS REQUIRED TO CANCEL THE RFP IN LIGHT OF THE MATERIAL CHANGES OR IN THE ALTERNATIVE, ED WAS REQUIRED TO AMEND AND RE-OPEN

58.      Plaintiff incorporates by reference paragraphs 1-57.

59.      ED's failure to cancel the RFP violated CICA and the FAR and is arbitrary, capricious, and lacks a reasonable basis.

60.      ED's removal of components A, B, and H significantly modified the Phase I solicitation scope of work, removing much of the integration and IAM activities where the agency had not reserved or specifically mentioned that possibility in the initial RFP such that Navient, and other potential bidders, did not nor could not have anticipated that change.

61.      Agencies are required to obtain full and open competition using procedures consistent with CICA and the FAR. 41 U.S.C. § 3301(a). When the solicitation was originally issued in February 2018, the agency determined to meet CICA's full and open competition requirements by using a two-phase source selection procedure as authorized by 20 U.S.C. § 1018a.

62.      Once the agency substantially changed the requirements by removing components A, B, and H, the agency's actions were contrary to CICA and the FAR. In instances like this, the FAR requires the agency to cancel the solicitation and issue a new one. FAR 15.206(e) ("If, in the judgment of the contracting officer, based on market research or otherwise, an amendment proposed for issuance after offers have been received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would

have submitted offers had the substance of the amendment been known to them, the contracting officer shall cancel the original solicitation and issue a new one, regardless of the stage of the acquisition.").

63.     ED also violated CICA and the FAR by failing to conduct market research once it determined to eliminate components A, B, and H.  If ED had conducted any reasonable market research it would have found that Navient and other prospective offerors were interested and capable of responding to the materially changed requirements in different capacities.

64.     ████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████

65.     Moreover, 20 U.S.C. § 1018a requires, in relevant part for the first phase, that the agency provide "[a] general description of the scope or purpose of the procurement that provides sufficient information on the scope or purpose for sources to make informed business decisions regarding whether to participate in the procurement."

66.     By removing components A, B, and H, the agency materially changed the "sufficient information on the scope or purpose for sources to make informed business decisions regarding whether to participate in the procurement."  The agency's down select decisions for

████████████████████████████████████████████

Phase I are based on insufficient information provided in Phase I for those sources to decide whether and how to participate.

67.     Further, the agency's actions in removing components A and B and seeking to obtain those requirements through an RFQ issued under CIO-SP3 (issued August 29, 2018) further violate 20 U.S.C. § 1018a because reissuing these two requirements under a different procurement subverts the agency's responsibilities to select vendors who submitted responses under Phase I to continue to Phase II.  The agency's actions materially altered the procurement scope.  The agency's actions materially shifted away from a focus on integration among the various components such that two components are being procured under an unrelated limited source procurement vehicle and now the remaining components are now being managed through disassociated Phase II solicitations.

68.     ED's actions prevent offerors from competing on a level playing field.

69.     If Navient had known that components A, B, and H were not part of the procurement – ███████████████████████████████████████████████ ██████████████████ – and that the agency was not focused on integration and IAM, Navient would have ████████████████████████████████████.

70.     In other words, Navient ███████████████████████████████████ ████████████████████████████████████. A new solicitation would also likely permit additional contractors to compete for the procurement.

71.     The change in scope of the Phase I solicitation significantly affects █████ ██████████████████████████

72.     The removal of components A, B, and H exposes Navient to risk that ████ ███████████████████████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████████
██████████████████████.

73.     In the alternative, under FAR 15.206, the agency should amend the solicitation to formally remove components A, B, and H in accordance with the agency's modified and revised needs, amend the RFP to allow prospective offerors, including new offerors, to submit Phase I proposals based on those revised needs, and make new Phase I down selections.[6]

74.     ED's failure to cancel (or, in the alternative, to amend) the RFP required offerors to submit Phase I proposals that are not based on the agency's actual needs and places Navient at a competitive disadvantage.

75.     Navient is materially prejudiced by ED's failure to cancel the RFP and issue a new RFP based on its significantly revised needs and ED's violation of the governing statutes and regulations.  If ED had properly evaluated its needs, ED would have cancelled the RFP, issued a new RFP, ███████████████████████████████████████████, and that information would have been considered during the Phase I and Phase II evaluations.

76.     ED's failure to cancel (or, in the alternative, to amend) the RFP is therefore arbitrary, capricious, and unreasonable, and otherwise violates applicable federal procurement laws and regulations.

---

[6] Navient's interpretation of the solicitation requirements is the only reasonable interpretation. Given the agency's repeated stress on integration among the components as a key concern and as critical to the success of the NextGen procurement, Navient had no reason to believe the agency would remove much of the integration and IAM components.  To the extent there is more than one reasonable interpretation of the RFP language, however, the RFP includes a latent ambiguity that must be corrected through a new solicitation.

████████████████████████████████████████████

**COUNT II –**
**GIVEN THE SIGNIFICANT MODIFICATIONS TO COMPONENT**
**D FOR PHASE II PROPOSALS, ED WAS REQUIRED TO**
**CANCEL THE RFP IN LIGHT OF THE MATERIAL CHANGES OR IN THE**
**ALTERNATIVE, ED WAS REQUIRED TO AMEND AND RE-OPEN**

77.     Plaintiff incorporates by reference paragraphs 1-76.

78.     Navient was ████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████████████████████████, did not nor could not have anticipated those changes and addition of some requirements from one component to another.

79.     Agencies are required to obtain full and open competition using procedures consistent with CICA and the FAR.  41 U.S.C. § 3301(a).  When the solicitation was originally issued in February 2018, the agency determined to meet CICA's full and open competition requirements by using a two-phase source selection procedure as authorized by 20 U.S.C. § 1018a.

80.     Once the agency substantially changed the scope by adding requirements to component D for Phase II that had previously been within the scope of components E and F, the agency's actions were contrary to CICA and the FAR.  In instances like this, the FAR requires the agency to cancel the solicitation and issue a new one.  FAR 15.206(e).

81.     Navient, and other prospective offerors, would ████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████.  Navient's, and likely other prospective offerors', proposal would have ████████████████████████████████████████████████ █████████████

████████████████████████████████████████████████████████

82.     Moreover, 20 U.S.C. § 1018a requires, in relevant part for the first phase, that the agency provide "[a] general description of the scope or purpose of the procurement that provides sufficient information on the scope or purpose for sources to make informed business decisions regarding whether to participate in the procurement."

83.     By materially changing component D, the agency materially changed the "sufficient information on the scope or purpose for sources to make informed business decisions regarding whether to participate in the procurement."  The solicitation did not contain the true and correct agency needs and put potential offerors at a competitive disadvantage.

84.     ED's actions prevent offerors from competing on a level playing field.

85.     If Navient had known that component D was going to be significantly altered Navient would have ████████████████.

86.     In other words, Navient would ███████████████████████████████ ████████████████████████████████████.  A new solicitation would also likely permit additional contractors to compete for the procurement.

87.     The change in scope of component D for the Phase II solicitations significantly affects ███████████████████████████████.

88.     In the alternative, under FAR 15.206, the agency should amend the Phase I solicitation in accordance with the agency's modified and revised needs, amend the RFP to allow prospective offerors, including new offerors, to submit Phase I proposals based on those revised needs, and make new Phase I down selections.

89.     ED's failure to cancel (or, in the alternative, to amend) the RFP required offerors to submit Phase I proposals that are not based on the agency's actual needs and places Navient at a competitive disadvantage.

████████████████████████████████████████████████████

90.     Navient is materially prejudiced by ED's failure to cancel the RFP and issue a new RFP based on its significantly revised needs and ED's violation of the governing statutes and regulations.  If ED had properly evaluated its needs, ED would have cancelled the RFP, issued a new RFP, Navient would have ████████████████████████████, and that information would have been considered during the Phase I and Phase II evaluations.

91.     ED's failure to cancel (or, in the alternative, to amend) the RFP is therefore arbitrary, capricious, and unreasonable, and otherwise violates applicable federal procurement laws and regulations.

## COUNT III –
## INJUNCTIVE RELIEF

92.     Plaintiff incorporates by reference paragraphs 1-91.

93.     ED's actions constitute a clear and prejudicial violation of CICA, 20 U.S.C. § 1018a, and the FAR, and are otherwise arbitrary and unreasonable.

94.     ED's actions also violate the requirement that those who do business with the government be treated on a fair and consistent basis.

95.     ED's failure to cancel the solicitation and issue a new solicitation that properly reflects the agency's actual needs is arbitrary, capricious, and without a rational basis because ED failed to allow offerors the opportunity to submit Phase I proposals based on the agency's actual needs; improperly seeks to procure components A and B through a different procurement vehicle; materially altered component D for Phase II ████████████████████████ ████████████████████████████████ and otherwise violated fundamental competition requirements in the governing statutes and regulations.

96.     Navient will meet its burden to show injunctive relief is necessary.  Navient will demonstrate success on the merits.  Navient has and will continue to suffer irreparable and

immediate injury unless injunctive relief is issued. The continued injury to Navient outweighs any damage to the ED. Injunctive relief will serve and not adversely affect the public's interest.

97. ED's actions, as set forth more fully above, are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. ED's actions constitute a clear violation of applicable statutes and regulations.

98. Navient is materially prejudiced by ED's improper actions and ED's failure to follow established procedures, laws and regulations.

99. ED and its instrumentalities will suffer no injury, loss or inconvenience by the issuance of an injunction by this Court. To the contrary, ED, the public, and Navient will benefit from proper enforcement of the acquisition laws.

## COUNT IV –
## DECLARATORY JUDGMENT

100. Plaintiff incorporates by reference paragraphs 1-99.

101. ED's actions are contrary to CICA, 20 U.S.C. § 1018a, and the FAR and are otherwise arbitrary and unreasonable.

102. A declaratory judgment addressing proper enforcement of the applicable laws and regulations will provide a conclusive and practical resolution of this controversy.

## PRAYER FOR RELIEF

**WHEREFORE**, Navient respectfully requests this Court to enter judgment in Navient's favor and against Defendant, and to provide the following relief:

1. A judgment declaring that ED's failure to cancel or amend the solicitation is arbitrary, capricious, an abuse of discretion, and otherwise violates the applicable federal procurement laws and regulations, and 20 U.S.C. § 1018a.

2.     Permanent injunctive relief requiring ED to cancel the RFP or, in the alternative, amend the RFP and permit proposals from new offerors for Phase I.

3.     Permanent injunctive relief requiring ED to issue a new RFP based on the agency's actual needs, and allowing offerors the opportunity to submit Phase I proposals based on those revised needs (or, in the alternative, amend the RFP and permit proposals from new offerors for Phase I).

4.     Permanent injunctive relief prohibiting ED from procuring these FSA processing and servicing environment services under the current RFP unless ED cancels or, in the alternative, amends the RFP and permits proposals from new offerors for Phase I.

5.     Continuing jurisdiction over this case to ensure compliance with the Court's mandate.

6.     An award to Plaintiff of costs, including bid and proposal costs and reasonable attorneys' fees as damages for the failure to cancel, pursuant to CICA, 28 U.S.C. § 1491; 28 U.S.C. §§ 2201 and 2202; and 28 U.S.C. §§ 1920 and 2412.

7.     Such other relief as the Court deems just and equitable.

Respectfully submitted,

Date:  October 31, 2018

By:  /s/ Jonathan D. Shaffer
Jonathan D. Shaffer (jshaffer@smithpachter.com)
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Tysons Corner, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel of Record for Plaintiff*
*Navient Solutions, LLC*

*Of Counsel*
Mary Pat Buckenmeyer (mbuckenmeyer@smithpachter.com)
Nora K. Brent (nbrent@smithpachter.com)
SMITH PACHTER MCWHORTER PLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have caused a true and accurate copy of Navient Solutions, LLC's

Complaint to be delivered by the delivery method indicated below on this 31st day of October

2018 to the following:

United States Department of Justice (*via electronic mail*)
Commercial Litigation Branch
1100 L Street, NW, 8th Floor
Washington, DC 20530
Tel: (202) 616-0475; Fax: (202) 305-7644
Email: nationalcourts.bidprotest@usdoj.gov

FSA Acquisitions Servicing Team
U.S. Department of Education
Union Center Plaza, Rm. 91F1
830 First Street, NE
Washington, DC 20202-5405
Email: MPDSETeam@ed.gov

Sara Falk (*via electronic mail*)
United States Department of Education
Office of the General Counsel
400 Maryland Avenue, SW
Room 6C157
Washington, D.C. 20202-2110
Tel: (202) 453-6341; Fax: (202) 401-9528
Email:  Sara.Falk@ed.gov

David R. Pehlke (*via electronic mail*)
United States Department of Justice
Civil Division
Post Office Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0252; Fax: (202) 353-0461
Email:  david.r.pehlke@usdoj.gov

/s/ Jonathan D. Shaffer
Jonathan D. Shaffer