# In the United States Court of Federal Claims

Nos. 18-1679C, 18-1758C, 18-1786C, 18-1813C, 18-1824C, 18-1852C, 18-1853C
(consolidated)

(Filed: December 21, 2018)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*  \*
                                                    \*
NAVIENT SOLUTIONS, LLC., *et al.*,                  \*
                                                    \*   Pre-Award Bid Protest; Department
              Plaintiffs,                           \*   of Education Loan Collections;
                                                    \*   Motion for Preliminary Injunction;
v.                                                  \*   Likelihood of Success on the
                                                    \*   Merits; Irreparable Harm; Balance
THE UNITED STATES,                                  \*   of Hardships; Public Interests; 28
                                                    \*   U.S.C. § 1491(b); RCFC 65(d);
              Defendant.                            \*   Granting Injunctive Relief.
                                                    \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*  \*

*David R. Johnson*, with whom were *Tyler E. Robinson*, *Ryan D. Stalnaker*, and *Caroline E. Colpoys*, Vinson & Elkins LLP, Washington, DC for Plaintiff FMS Investment Corporation.

*Jana Moses*, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Patricia M. McCarthy*, Assistant Director, Civil Division, U.S. Department of Justice, Washington, D.C., as well as *Sarah Falk*, General Attorney, Office of the General Counsel, U.S. Department of Education, for Defendant.

OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

WHEELER, Judge.

Before the Court is Plaintiff FMS Investment Corporation's ("FMS") motion for the Court to (1) enjoin FMS's incumbent Award Term Extension ("ATE") contract for student loan debt collection services from ending as scheduled in April 2019, and (2) require the Department of Education ("ED") to give FMS more accounts to service. The underlying protest involves ED's attempt to use a two-phase solicitation for student loan administration services. After downselecting offerors to compete in Phase II, ED then altered the services it sought, precipitating these protests. FMS, and other plaintiff Private

Collection Agencies ("PCAs"), which perform collection services on defaulted student loans for ED, allege that ED improperly added these services to Phase II.

On December 14, 2018, ED agreed to institute corrective action and issue a revised NextGen solicitation by January 15, 2019. Nevertheless, FMS claims that ED fails to give it enough defaulted student loan accounts under its ATE to survive until ED issues its revised NextGen solicitation—assuming it includes PCA services—or issues another solicitation for PCA services. For the reasons below, FMS's motion is DENIED.

<u>Background</u>

FMS is one of seven Plaintiffs in this consolidated bid protest and one of several PCAs that have appeared in a series of challenges to ED procurements for student loan debt collection services. <u>See, e.g.,</u> <u>FMS Inv. Corp v. United States</u>, 139 Fed. Cl. 221 (2018) (enjoining ED's cancellation of a PCA solicitation); <u>FMS Inv. Corp. v. United States</u>, 136 Fed. Cl. 439 (2018) (enjoining ED from recalling PCA accounts).

The current bid protest involves ED's two-phase "Next Generation Financial Services Environment" ("NextGen") procurement for student loan administration services. ED initially began to develop NextGen through a two-phase solicitation. ED divided Phase I into nine components, each for different types of services. ED evaluated Phase I offers for each service component, then downselected certain offerors to compete in Phase II according to the components that the offerors bid on in Phase I. ED then amended and cancelled parts of the solicitation. Among other changes, Plaintiffs alleged that ED added services typically performed by PCAs. FMS, among others, protested these changes, claiming that ED denied them an opportunity to compete because ED's Phase I solicitation did not put them on notice that ED would inject PCA services into Phase II.

On December 4, 2018, the Court heard oral argument on another Plaintiff's motion for a preliminary injunction to prevent ED from enforcing a deadline for offers on Phase II of one of the NextGen components. At the Court's urging, on December 14, 2018, ED agreed to institute corrective action and publish a revised solicitation by January 15, 2019. The Court agreed to stay proceeding until then.

On December 19, 2018, FMS filed a motion for a temporary restraining order and preliminary injunction. FMS claims that if the Court does not issue an injunction to force ED to extend FMS's ATE and provide FMS with accounts to service, FMS will be forced to "layoff[] its employees and shutdown[] its infrastructure" creating a "corporate tailspin from which" it cannot recover. Dkt No. 72, Pl. Mot. at 22. FMS's ATE for PCA services extends through April 2019. Dkt. No. 72, Pl. Mot., Ex. 1 at 2. FMS does not claim that ED's refusal to give it more accounts breached ED's ATE terms with FMS. FMS does not claim any legal entitlement to more borrower accounts other than generally claiming irreparable harm.

FMS asks the Court to "(i) enjoin FMS's incumbent [ATE] from ending, and (ii) require ED to resume placement of a sufficient number of new default accounts to FMS for FMS to service." FMS claims that, "[b]ased on [its] performance history, a reasonable and sufficient number of accounts would be 40,000" in the first month, "and 20,000 accounts thereafter for the duration of the injunction." Dkt. No. 72, Pl. Mot. at 1.

The Government responds that FMS is seeking relief above and beyond what is needed to preserve the status quo during litigation. Moreover, FMS's 2015 ATE provided for a two-year period in which FMS would receive new accounts and a two-year in-repayment retention period, in which ED would not furnish new accounts and FMS would windup accounts that are in repayment. The Government argues that that process is occurring according to the 2015 ATE terms and that FMS cannot claim financial hardship stemming from the agreed-upon windup period as irreparable harm.

Analysis

This Court has broad authority to order injunctive relief in the context of bid protests. See 28 U.S.C. § 1491(b); Turner Constr. Co., Inc. v. United States, 645 F.3d 1377, 1388 (Fed. Cir. 2011). The function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits. Cont'l Servs. Grp., Inc. v. United States, 722 Fed. Appx. 986, 994 (Fed. Cir. 2018). "[A] preliminary injunction is an extraordinary and drastic remedy" that is not "routinely granted." Akal Sec., Inc. v. United States, 87 Fed. Cl. 311, 316 (2009).

When deciding whether to grant a preliminary injunction, the Court weighs four factors: (1) the likelihood of plaintiff's success on the merits; (2) the prospect of irreparable harm to the plaintiff in the absence of injunctive relief; (3) the balance of hardships; and (4) the public interest. KWV, Inc. v. United States, 108 Fed. Cl. 448, 455 (2013); Serco, Inc. v. United States, 101 Fed. Cl. 717, 720 (2011). No single factor is determinative, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993).

A. Likelihood of Success on the Merits

While the Court does not intend to make factual findings at this time, it is convinced that Plaintiffs are likely to succeed on the merits of their bid protests. The administrative record ("AR") does not show that bidders should have or could have been aware that ED might inject defaulted loan collection services into Phase II of the solicitation. The Government argued that 20 U.S.C. § 1018a validates ED's decision to rearrange Phase II of the solicitation in any way that sees fit. The Government leans on 20 U.S.C. § 1018a(2)(A)(i)'s requirement that the agency need only provide a "general statement" of what it intends to procure in Phase I of a two-phase procurement. However, the statute

does not insulate ED from its obligation to not act arbitrarily. ED appears to have done exactly that by adding PCA services to NextGen Phase II after downselecting the Phase I offerors. In any case, ED has already agreed to take corrective action to address the Plaintiffs' allegations.

Nevertheless, the success on the merits factor favors the government because even if FMS prevails on the merits of its protest, judgment in its favor would do nothing to remedy the harm FMS asserts in its motion. The purpose of a preliminary injunction is to prevent harm to a plaintiff that may occur before a court can render a final judgment. See Continental Serv. Grp., 722 Fed. Appx. 986, 994 (Fed. Cir. 2018). An injunction is not intended to prevent all harm that could befall a plaintiff during a pending litigation, but only that harm that could stem from failing to preserve the status quo while the case is pending. Cf. Timberline Helicopters, Inc. v. United States, 140 Fed. Cl. 117, 121 (2018) (denying preliminary injunction in part because the relief plaintiff requested was not an irreparable harm that would be remedied by preserving the status quo ante).

Here, FMS is asking for relief—an extended ATE and a certain quota of business from ED—that it could not attain if the Court eventually rules in its favor. FMS argues that the status quo includes some minimum amount of debt collection business. FMS is mistaken. The status quo ante includes the windup period that FMS agreed to with ED under the terms of its ATE. Therefore, the injunction FMS requests would go beyond preserving the status quo. Further, FMS requests relief that would not be available to it even if the Court ultimately found in FMS's favor. The Court cannot grant preliminary injunctive relief beyond that which preserves the status quo pending the resolution of the protest or that exceeds the scope of relief available to FMS upon final judgment.

B. Irreparable Harm

For similar reasons, FMS's motion must fail because FMS cannot demonstrate irreparable harm stemming from this Court's deciding not to award injunctive relief. [A] protestor "must show that without a preliminary injunction it will suffer irreparable harm before a decision can be rendered on the merits." Akal Security, Inc. v. United States, 87 Fed. Cl. 311, 319 (2009). Losing an opportunity to compete may constitute irreparable harm. See Lab. Corp. of Am. v. United States, 108 Fed. Cl. 549, 568 (2012). Losing key personnel and going out of business may also constitute irreparable harm. FMS Inv. Corp., 136 Fed. Cl. at 443.

However, "[n]o federal contractor has a right to maintain its incumbency in perpetuity, and the potential loss of the benefits of incumbency does not" amount to irreparable harm. Akima Intra-Data, LLC v. United States, 120 Fed. Cl. 25, 28 (2015) (quotation omitted) (addressing irreparable harm as it applies to a motion for a stay pending appeal). "[A]ll sorts of things that any incumbent would experience upon the loss of a successor contract are not sufficient to demonstrate irreparable harm." Id.

FMS claims that it "depends upon revenue" from "its PCA contract." Dkt. No. 72, Pl. Mot. at 22. FMS strains to blame ED for the consequences of FMS's own business decisions. ED is not bound to give FMS a minimum number of accounts or provide FMS with enough revenue to employ a certain number of people. Therefore, FMS will not suffer irreparable harm because of ED's failures to issue a new solicitation for PCA services, or because ED likely failed to comply with various competition requirements in executing the NextGen procurement. FMS's financial strain is "the unavoidable result" of its ATE coming to an end. See Telos Corp. v. United States, 129 Fed. Cl. 573, 578 (2016). ED's decision to refrain from giving FMS more accounts to service may be ill-informed, but it is legal. FMS chose to depend upon ED contracts to survive. FMS chose to enter into a PCA contract that does not guarantee it a minimum amount of business. The Court's power to issue a preliminary injunction does not exist to remedy this type of harm.

      C.      Balance of Hardships

The balance of hardships factor does not favor either party. FMS argues that it will have to lay off staff and potentially go out of business if the Court does not grant the preliminary injunction that it seeks. But even if that is true, FMS's hardships here do not stem from issues involved in the pending litigation. FMS's hardship emanates from its own business decisions. The Court cannot account for these harms in making its decision.

      D.      Public Interest

For the reasons above, a Court's issuing a preliminary injunction providing the extraordinary relief FMS requests would not serve the public interest.

### Conclusion

The Court is sympathetic to FMS's financial situation, but it is not empowered to grant the type of extraordinary preliminary relief that FMS requests. The Court encourages the parties to communicate about these issues outside of court and reach an understanding on the next steps because lengthy procurement delays benefit no one. For the reasons stated above, FMS's motion for a temporary restraining order and preliminary injunction is DENIED.

IT IS SO ORDERED.

                                                    s/ Thomas C. Wheeler
                                                    THOMAS C. WHEELER
                                                    Judge