## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | | |
|---|---|---|
| NAVIENT SOLUTIONS, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 18-1679C (consolidated) |
| THE UNITED STATES, | ) | |
| | ) | Judge Thomas C. Wheeler |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of this Court (RCFC), defendant, the United States, respectfully requests that this Court dismiss the complaints in these consolidated protests, because the Department of Education Office of Federal Student Aid has canceled components C, D, E, and F of the NextGen solicitation and issued new component solicitations.[1]  As a result, this consolidated bid protest is moot.  In support of this motion, we state the following.

### STATEMENT OF FACTS

On February 20, 2018, Federal Student Aid (FSA), an office within the Department of Education, issued the Phase I NextGen Financial Services Environment (NextGen) Solicitation.  With the NextGen procurement, FSA sought to comprehensively transform and modernize the way it engages with its customers as they apply for financial aid, receive financial aid, and repay their student loans. The NextGen procurement was

---

[1]     The consolidated plaintiffs are:  Navient Solutions, LLC (No. 18-1679); FMS Investment Corp. (No. 18-1786); Higher Education Authority of the State of Missouri (No. 18-1758); Continental Services Group, Inc. (No. 18-1813); Pennsylvania Higher Education Assistance Authority (No. 18-1824); GC Services LP (No. 18-1852); and Account Control Technology, Inc. (No. 18-1853).

initially conducted as a two-phase procurement in accordance with the Procurement

Flexibility statute applicable to FSA as a performance based organization. *See* 20 U.S.C.

§ 1018a.

The Phase I solicitation divided the contemplated work into nine Components.

The nine Components were:

- Component A: Enterprise-wide digital platform and related middleware
- Component B: Enterprise-wide contact center platform, customer relationship management (CRM), and related middleware
- Component C: Solution 3.0 (core processing, related middleware, and rules engine)
- Component D: Solution 2.0 (core processing, related middleware, and rules engine)
- Component E: Solution 3.0 business process operations
- Component F: Solution 2.0 business process operations
- Component G: Enterprise-wide data management platform
- Component H: Enterprise-wide identity and access management (IAM)
- Component I: Cybersecurity and data protection

Phase I Solicitation, p. 1 (AR311).

FSA asked vendors to submit separate responses for every Component in which

they were interested.  AR311.  Only offerors selected to proceed to Phase II on a

component could submit Phase II offers on that component.  AR340.

Five of the nine Next Gen Components in Phase I were focused on the

development and implementation of information technology (IT) platforms, data

management or cyber-security solutions. That includes a new digital platform

(Component A), a new contact center and customer relationship management (CRM)

platform (Component B), a new integrated data management platform (Component G), a

new identity and access management system (Component H), and new cyber security and

data protection solutions (Component I). AR321-330.

The other four Components (C, D, E and F) were focused on the processing and servicing of student loan borrower accounts. AR321-330.  Two of those (Components C and D) entailed providing the technology platforms and automated tools utilized in servicing borrower accounts ("core processing, middleware and rules engines"). Component D also includes providing transitional support services. Components E and F, included customer engagement and outreach, contact center support, and loan processing or "back office" activities needed to process and service borrower accounts. These functions are referred to in the Solicitation as "business process operations." *Id*.

After the evaluations of Phase I submissions, FSA disclosed the vendors who were eligible to participate in Phase II.  *See* AR1311-1321.  On October 31, 2018, Navient Solutions, LLC (Navient) filed a bid protest in this Court alleging primarily that FSA had improperly altered the scope of work under certain components as the solicitation moved from Phase I to Phase II.  *See*, *e.g.*, Navient Compl. ¶¶ 8-10.  Navient alleges that these shifts in the work that would fall under certain components, and in particular, those components dealing with business processing operations (D, E, and F), prevented it from participating in certain component solicitations in Phase I that it would have participated in had it known at the time the scope of work that would eventually shift to those components in Phase II.  *Id.*

After Navient filed its complaint, the remaining consolidated plaintiffs filed complaints that, with one exception, similarly alleged that FSA had improperly amended the business processing operations components between Phases I and II.  Pennsylvania Higher Education Assistance Authority (PHEAA) alleges that FSA improperly rejected its Phase II submission for untimeliness.  PHEAA Compl. ¶ 4.  The remaining

consolidated plaintiffs fall into two groups.  Like Navient, the Higher Education Loan Authority of the State of Missouri (MOHELA) alleges that the component changes between Phase I and Phase II prevented it from submitting a proposal on the work it was most interested in performing, because that work had shifted to a different component in phase II.  *See* MOHELA Compl. ¶ 4.  Unlike Navient, MOHELA, and PHEAA, plaintiffs FMS Investment Corp. (FMS), Continental Services Group (ConServ), GC Services, and Account Control Technology (ACT) did not participate in Phase I of the NextGen solicitation.  These plaintiffs allege that Phase I did not clearly state that the particular business processing operations that they perform, primarily defaulted student loan servicing, were among the services sought in the NextGen solicitation.  *See, e.g.*, ACT Compl. ¶ 5 ("ACT did not submit a proposal under Phase I of the NextGen procurement because it was led by the agency to believe that NextGen would not involve default debt collection.").  They allege that the Phase II changes to components D, E, and F, in particular, made it clear to them that default loan servicing was incorporated into the NextGen solicitation.  *See, e.g.*, FMS Compl. ¶ 3.  They allege that FSA's decision to alter the scope of work in these components between Phases I and II improperly denied them the opportunity to compete for the work.  *See id.*; *see also* ConServ Compl. ¶ 2, GC Services Compl. ¶¶ 1-3, ACT Compl. ¶ 5.

At a December 4, 2018 hearing, the Court expressed concern regarding the apparent alteration to the work contemplated under components D, E, and F in the Phase II solicitation.  The Court asked FSA to consider whether it would take corrective action.  FSA agreed to do so and to notify the Court of its decision on or before December 14, 2018.  ECF No. 46.  On December 14, 2018, FSA notified the Court that it would take

corrective action.  ECF No. 66.  Specifically, FSA stated that by January 15, 2019, it would cancel components C, D, E, and F and reissue new component solicitations that would be open to new offerors.  *Id.*  On January 15, 2019, FSA cancelled the component C, D, E, and F solicitations and issued new solicitations (E and F are now combined in a single component solicitation).  *See* https://www.fbo.gov/index.php?s=opportunity&mode=list.

## ARGUMENT

This protest should be dismissed for lack of subject-matter jurisdiction because FSA's decision to cancel and reissue the challenged component solicitations renders the consolidated plaintiffs' protests moot.  *See Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 940 (Fed. Cir. 2007) ("When, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should generally be dismissed."); *see also Coastal Envtl. Grp., Inc. v. United States*, 114 Fed. Cl. 124, 131 (2013) ("[T]he Court of Federal Claims has consistently found that the cancellation of a procurement renders a protest of that procurement moot.").  This Court does not have jurisdiction over moot cases.  *See CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl. 554, 556 (2000) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971))

"The mootness doctrine originates from the 'case or controversy' requirement of Article III of the United States Constitution."  *Northrop. Corp., Northrop Elecs. Sys. Div. v. United States*, 27 Fed. Cl. 795, 800 n. 4 (1993) (citing *De Funis v. Odegaard*, 416 U.S. 312, 316 (1974)).  Although the jurisdiction of this Court, as an Article I court, is not limited by the "case or controversy" requirement of Article III, this Court and other

Article I courts have adopted general justiciability precepts on prudential grounds.  *See, e.g., Schooling v. United States*, 63 Fed. Cl. 204, 209 (2004) (dismissing case for lack of subject-matter jurisdiction because claims asserted in the complaint were moot); *CW Gov't Travel*, 46 Fed. Cl. at 558 (citing *Zevalkink v. Brown*, 102 F.3d 1236, 1243 (Fed. Cir. 1996)) (granting motion to dismiss for mootness); *see also Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) ("The Court of Federal Claims, though an Article I court . . . applies the same standing requirements enforced by other federal courts created under Article III.").  The Supreme Court has stated that "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

The newly issued component solicitations provide the consolidated plaintiffs with the relief sought – an opportunity to compete for the work covered under the business processing operations components.  The new solicitations do not employ a phased approach, but will proceed instead as FAR Part 15 procurements.  In addition, the new solicitations permit offerors to use non-exclusive teaming agreements, giving interested parties the option to join a team, or multiple teams, as the provider of specific services of interest to them.  *See* https://www.fbo.gov/index.php?s=opportunity&mode=list.

Navient and MOHELA now will be able to compete for the work that they allege was moved improperly between components when the solicitation proceeded to Phase II.  PHEAA now has another opportunity to submit a timely proposal.  FMS, ConServ, GC Services, and ACT now have the opportunity to compete for the work that they allege FSA improperly added to Phase II after Phase I had closed.  All of the consolidated

plaintiffs have received the relief that they could reasonably expect to receive from this Court.  Accordingly, the complaints should be dismissed.

<u>CONCLUSION</u>

Based on the foregoing, we respectfully request that the Court dismiss the complaints for lack of subject-matter jurisdiction.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

<u>s/ Patricia M. McCarthy</u>
PATRICIA M. McCARTHY
Assistant Director

<u>s/ David R. Pehlke</u>
DAVID R. PEHLKE
Trial Attorney
Department of Justice – Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0252
Fax: (202) 353-0461
david.r.pehlke@usdoj.gov

January 16, 2019                        Attorneys for Defendant